**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HENDRIK MUELLER, on Behalf of Himself and All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     vs.<br><br>ENDAVA, PLC, JOHN COTTERELL, and MARK THURSTON,<br><br>               Defendants. | Civil Action No. 1:24-cv-06423-JHR |

**FULTON COUNTY EMPLOYEES' RETIREMENT SYSTEM'S OPPOSITION TO**
**COMPETING LEAD PLAINTIFF AND LEAD COUNSEL MOTION**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    I.       FULTON COUNTY RETIREMENT IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD ..............................3

    II.     FT. LAUDERDALE AND PUERTO RICO RETIREMENT SHOULD NOT BE PERMITTED TO LEAPFROG FULTON COUNTY RETIREMENT BY AGGREGATING THEIR LOSSES .....................5

          A.      Ft. Lauderdale and Puerto Rico Retirement Concede that They Lack a Pre-Litigation Relationship ......................................................8

          B.      Ft. Lauderdale and Puerto Rico Retirement Have Failed to Show that They Are Actively Involved in the Litigation ............................8

          C.      Ft. Lauderdale and Puerto Rico Retirement Lack Any Concrete Plans to Cooperatively Manage this Litigation .........................11

          D.      The Evidence Shows that Puerto Rico Retirement Cannot Function as a Sophisticated Institutional Plaintiff in This Action.................................................................................................12

             1.    Puerto Rico Retirement's Grave Financial Situation Raises Serious Questions About Its Ability to Effectively Serve as Lead Plaintiff ...............................................................................................12

             2.    Puerto Rico Retirement's High Executive Director Turnover Undercuts Its Ability to Serve as a Sophisticated Lead Plaintiff....................16

          E.      The Proposed Grouping of Ft. Lauderdale and Puerto Rico Retirement Appears Driven by Their Respective Counsel ........................16

    III.    IN ADDITION, PUERTO RICO RETIREMENT IS AN INADEQUATE LEAD PLAINTIFF AND ITS MOTION FOR APPOINTMENT SHOULD BE DENIED ON THAT SEPARATE BASIS ..............................................................................................18

          A.      Puerto Rico Retirement Cannot Effectively Oversee Counsel ..................................................................................................18

          B.      Puerto Rico Retirement Is Inadequate Because Its Potential Insolvency Will Jeopardize the Class ......................................................19

CONCLUSION.................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batter v. Hecla Mining Co.*,
  No. 19-cv-05719 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...............................18

*Cook v. Allergn PLC*,
  No. 18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)...............................17

*Diabat v. Credit Suisse Grp. AG*,
  No. 23 CIV 5874 (CM), 2024 WL 4566372 (S.D.N.Y. Oct. 24, 2024) ............................5, 18

*Elstein v. Net1 UEPS Techs., Inc.*,
  No. 13 CIV 9100(ER), 2014 WL 3687277 (S.D.N.Y. July 23, 2014)...................................17

*Glauser v. EVCI Career Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................................16

*In re Donnkenny Inc. Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1997) ...........................................................................................6

*In re McDermott Int'l, Inc. Sec. Litig.*,
  No. 08 Civ. 9943(DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) .......................................17

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ...........................................................................................18

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015).............................................................................2, 6, 12

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001)..................................................................................6, 17

*In re Veeco Instruments, Inc. Sec. Litig.*,
  233 F.R.D. 330 (S.D.N.Y 2005) ...........................................................................................16

*Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*,
  No. 15-CV-3599 (KMW), 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)..........................6, 11

*Jakobsen v. Aphria, Inc.*,
  No. 18 CIV 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ..........................8, 9

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19 CIV 6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ........................ *passim*

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...................................................................................7

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
No. 19-CV-8204 (VSB), 2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019)..............................10, 19

*McKenna v. Dick's Sporting Goods, Inc*,
No. 17-CV-3680 (VSB), 2018 WL 1083971 (S.D.N.Y. Feb. 27, 2018) ...................................3

*Micholle v. Ophthotech Corp.*,
No. 17-CV-1758 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)........................6, 8, 19

*Nakamura v. BRF S.A.*,
No. 18-CV-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018)...............................6, 11

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) .............................................................................................11

*Porter v. Graftech International Ltd.*,
No. 1:24 CV 00154, 2024 WL 2189642 (N.D. Ohio May 15, 2024).....................................20

*Rodriguez v. DraftKings Inc.*,
No. 21 Civ. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021).........................10, 18

*Rosian v. Magnum Hunter Res. Corp.*,
No. 13 CIV. 2668(KBF), 2013 WL 5526323 (S.D.N.Y. Oct. 7, 2013)...................................17

*Schaffer v. Horizon Pharma Plc*,
No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ..........................15, 18

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................................7

**Statutes**

15 U.S.C. §78u-1(a)(3)(B)(i), (iii) ........................................................................................1, 3

## SUMMARY OF ARGUMENT

In this securities class action, governed by the Private Securities Litigation Reform Act (the "PSLRA"), there are two competing motions for appointment as Lead Plaintiff and approval of Lead Counsel before the Court.[1] Lead Plaintiff movant Fulton County Employees' Retirement System ("Fulton County Retirement") filed a motion asserting a loss of $563,182.37 as a result of Defendants' alleged wrongdoing, which is the largest loss of any proper Lead Plaintiff movant. Accordingly, Fulton County Retirement is the "presumptive" Lead Plaintiff under the PSLRA and should be appointed because no competing movant has come forward with evidence showing that it is not adequate or typical within the meaning of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-1(a)(3)(B)(i), (iii).

The competing motion comes from two investors - Fort Lauderdale General Employees Retirement System ("Ft. Lauderdale") and the Trust of the Retirement System of the UPR ("Puerto Rico Retirement")—which each have asserted losses far smaller than the loss asserted by Fulton County Retirement. Accordingly, under the PSLRA, neither Ft. Lauderdale nor Puerto Rico Retirement is the presumptive Lead Plaintiff and their motion for Lead Plaintiff should be denied in favor of the motion made by Fulton County Retirement.

Seeking to avoid this outcome, Ft. Lauderdale and Puerto Rico Retirement ask the Court to aggregate their losses and argue that their combined losses are larger than Fulton County Retirement's individual loss. The Court should reject the request to aggregate losses because: (1) Ft. Lauderdale and Puerto Rico Retirement have not made the required evidentiary showing for aggregation, and (2) based on the record before the Court, it appears that Ft. Lauderdale's and

---

[1] Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as those set forth in Fulton County Employees' Retirement System's Motion. ECF Nos. 17 & 20. Unless otherwise noted, in case quotations, all emphasis is added and all citations are omitted.

Puerto Rico Retirement's attorneys assembled the proposed group as a makeshift for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the Action. Under these circumstances, allowing Ft. Lauderdale and Puerto Rico Retirement to displace the movant with the largest asserted loss would frustrate the purpose of the PSLRA.

Courts in this District are skeptical of aggregation because it allows lawyers to manipulate the PSLRA lead plaintiff process and circumvent the PSLRA's goal of having the most financially incentivized movant lead the class action. Accordingly, courts in this District only allow aggregation where the members of a group make a compelling evidentiary showing establishing that they can work together cohesively.

Here, the bare-bones leadership motion of Ft. Lauderdale and Puerto Rico Retirement resembles the many aggregation efforts rejected in this District as no more than "the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015). Indeed, each of the relevant factors show that Ft. Lauderdale and Puerto Rico Retirement will ***not*** function cohesively as a group and that permitting them to proceed as such will ***not*** best serve the class. ***First***, Ft. Lauderdale and Puerto Rico Retirement do not have a pre-existing relationship. ***Second,*** Ft. Lauderdale and Puerto Rico Retirement's participation in the litigation to date points to a lack of oversight. For example, Puerto Rico Retirement has filed an inaccurate certification that omits its participation in several recent class actions in violation of its obligation under the PSLRA to disclose such information. ***Third,*** Ft. Lauderdale and Puerto Rico Retirement do not submit any evidence that they can effectively prosecute this Action on a joint basis with two proposed Lead Counsel, only a boilerplate declaration that makes conclusory claims about cooperation. Courts in this District regularly reject such declarations as insufficient. ***Fourth***, although Puerto Rico Retirement is an

institution, its ability to serve as an effective Lead Plaintiff is suspect, given its precarious financial state. A court in this District has rejected Puerto Rico Retirement as a lead plaintiff on these grounds. ***Fifth***, lacking a pre-existing relationship or an organic reason to aggregate, it appears that the proposed grouping of Ft. Lauderdale and Puerto Rico Retirement is lawyer-driven.

***Finally***, even if aggregation were appropriate here (which it is not), given its demonstrated inability to supervise counsel, its submission of a faulty certification, and its ongoing financial problems and litigation, Puerto Rico Retirement is not an adequate Lead Plaintiff and its motion for Lead Plaintiff should be denied on that separate ground.

For the foregoing reasons and as set forth further below, the Court should grant Fulton County Retirement's motion for appointment of Lead Plaintiff and Lead Counsel and deny the competing motion from Ft. Lauderdale and Puerto Rico Retirement.

## **ARGUMENT**

## I. FULTON COUNTY RETIREMENT IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD

Fulton County has the largest alleged loss of any proper movant. For this reason, it is the presumptive Lead Plaintiff and should be appointed lead. The PSLRA sets forth a simple process for choosing a lead plaintiff. "There is a rebuttable presumption that the appropriate plaintiff is" the movant that "has the largest financial interest in the relief being requested" so long as that movant "meets the requirements of Rule 23 of the Federal Rules of Civil Procedure." *McKenna v. Dick's Sporting Goods, Inc*, No. 17-CV-3680 (VSB), 2018 WL 1083971, at \*3 (S.D.N.Y. Feb. 27, 2018); *see* 15 U.S.C. §78u-1(a)(3)(B)(i), (iii).

Here, Fulton County Retirement is the presumptive Lead Plaintiff. On October 25, 2024, Fulton County Retirement moved for appointment with a loss of $563,182.37 and sought appointment of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel. ECF Nos. 17

& 20-3. The competing movant group consists of Ft. Lauderdale, which had losses of $372,025.18, and Puerto Rico Retirement, which had losses of $317,081.11 - both far smaller than Fulton County Retirement's losses - and sought appointment of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Abraham, Fruchter & Twersky, LLP ("Abraham Fruchter") as Co-Lead Counsel. ECF No. 15 & 18-3. Thus, in the absence of aggregation, which is improper here for the reasons set forth below, Fulton County Retirement has the largest financial interest and is the presumptive lead.

Furthermore, in its opening papers, Fulton County Retirement demonstrated that it was adequate and typical within the meaning of Rule 23. ECF Nos. 20-2, 20-3, & 22. Fulton County Retirement is typical of the putative Class because, like all members of the Class, it purchased Endava securities during the Class Period, has claims that arise from the alleged misleading statements, and suffered economic injuries thereby. *Id.* Fulton County Retirement is also adequate because it has no conflicts of interest with the other members of the Class, has sufficient interest in the outcome of the case, and is subject to no unique defenses. *Id.*

Fulton County Retirement has also demonstrated itself to be an adequate representative by retaining competent and experienced counsel to prosecute this Action on behalf of itself and the Class. Scott+Scott is an international law firm that specializes in securities class action cases throughout the country and has significant resources to litigate this case. Scott+Scott consists of over 220 team members, including over 100 highly experienced attorneys. Scott+Scott also includes a team of paralegals, legal assistants, and other support staff including in-house investigators and an e-discovery litigation support group.

Scott+Scott has a long track record of successfully litigating securities class actions in this District and other state and federal courts and continues to litigate many securities class actions

4

across the country.  *See* ECF No. 20-4.  Recently, Scott+Scott was appointed lead counsel in: *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *City of Omaha Police and Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 1:23-cv-01769 (S.D.N.Y.); *Pompano Beach Police and Firefighters Ret. Sys. v. Olo Inc.*, No. 1:22-cv-08228 (S.D.N.Y.); *Jochims v. Oatly Group AB*, No. 1:21-cv-06360 (S.D.N.Y.); *White v. Brooge Energy Ltd.*, No. 2:24-cv-00959 (C.D. Cal.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); and *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.).

Additionally, in the past five years, Scott+Scott has secured substantial recoveries: *Okla. Firefighters Pens. v. Newell Brands Inc.*, No. L-003492-18 (N.J. Sup. Ct. Hudson Cnty.) ($102.5 million settlement); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-CIV-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million settlement); *In re Infinity Q Diversified Alpha Fund Securities Litigation*, Index No. 651295/2021 (N.Y. Sup. Ct.) ($45 million settlement); *In re DouYu Int'l Hold'gs Ltd. Sec. Litig.*, No. 651703/2020 (N.Y. Sup. Ct.) ($15 million settlement); *Erie Cnty. Emp. Ret. Sys. v. NN, Inc.*, No. 656462/2019 (N.Y. Sup. Ct.) ($9.5 million settlement). Scott+Scott's resources and experience will serve the putative Class well.

## II.    FT. LAUDERDALE AND PUERTO RICO RETIREMENT SHOULD NOT BE PERMITTED TO LEAPFROG FULTON COUNTY RETIREMENT BY AGGREGATING THEIR LOSSES

Ft. Lauderdale and Puerto Rico Retirement ask the Court to aggregate their individually much smaller losses together and collectively deem them the presumptive Lead Plaintiff instead of Fulton County Retirement.  The Court should reject this request because Ft. Lauderdale and Puerto Rico Retirement are a classic lawyer-driven amalgamation of the sort that courts in this District regularly reject.  "[T]he whole reason for the PSLRA lead plaintiff process is to ensure that securities fraud class actions are client-driven, not lawyer-driven."  *Diabat v. Credit Suisse Grp. AG*, No. 23 CIV. 5874 (CM), 2024 WL 4566372, at *4 (S.D.N.Y. Oct. 24, 2024).  For this

reason, some courts in this District have flatly refused to allow aggregation, holding that permitting "lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation," thereby undermining the PSLRA lead plaintiff process.  *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997); *see also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001) ("'To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff. One of the principal legislative purposes of the [Reform Act] was to prevent lawyer-driven litigation.'") (citing *Donnkenny*, 171 F.R.D. at 157).

Even those courts that do allow aggregation are highly "skeptical" of lead plaintiff groups where, as here, they are "artificial grouping[s] designed merely to qualify as lead plaintiff under the PSLRA."  *Petrobras*, 104 F. Supp. 3d at 621; *see also Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) ("A plaintiff group should not be made lead plaintiff if it offers no evidentiary basis for aggregation or was 'assembled as makeshift by attorneys' in order to claim the greatest financial interest."); *Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 (KMW), 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015) ("The Pension Fund Group cannot aggregate its financial losses because its two members, Teamsters 710 and Inter–Local Fund, are unrelated entities that (1) do not have a pre-existing relationship; (2) do not have an adequate plan for cooperation; and (3) have not shown that their grouping was not the product of lawyer-driven litigation.").  Accordingly, aggregation is not allowed unless a proposed movant-group submits compelling "evidence that they will function cohesively and thus best serve the class." *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *5 (S.D.N.Y. Mar. 13, 2018); *see BRF*, 2018 WL

3217412 at *3 ("A proposed plaintiff group has the burden of showing that aggregation is appropriate.").

Specifically, a movant-group's "evidentiary showing" must address the following factors: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015). Courts in this District do not "hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action . . . This skepticism is consistent with core aims of the PSLRA: shifting control of the litigation from the lawyers to the investors and preventing the manipulation by class action lawyers of the clients whom they purportedly represent." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392-93 (S.D.N.Y. 2008).

Here, Ft. Lauderdale and Puerto Rico Retirement have not carried their burden to show they can litigate in a cohesive manner for the benefit of the Class. To the contrary, the record shows that Puerto Rico Retirement is a serial plaintiff that was apparently introduced to Ft. Lauderdale through counsel for the sole purpose of manufacturing the largest financial interest. Ft. Lauderdale and Puerto Rico Retirement have only offered conclusory assurances regarding their ability to work together, which are of the sort that courts regularly reject. Furthermore, Puerto Rico Retirement exacerbates the concerns regarding cohesion by its own conduct in this case (the filing of an inaccurate certification) and through its ongoing financial struggles, as amplified by

7

the Commonwealth of Puerto Rico's financial struggles, which two courts in this District have deemed so significant as to disqualify Puerto Rico Retirement and another Puerto Rican employee retirement system (the Puerto Rico Electric Power Authority Employee Retirement System), respectively, from serving as lead plaintiff. Under these circumstances, aggregation is plainly not appropriate.

**A.    Ft. Lauderdale and Puerto Rico Retirement Concede that They Lack a Pre-Litigation Relationship**

The joint declaration of Ft. Lauderdale and Puerto Rico Retirement (ECF No. 18-4; the "Joint Declaration") confirms that these entities have no pre-litigation relationship. Rather, Ft. Lauderdale and Puerto Rico Retirement concede that the only connection between them is that they both purchased Endava securities during the putative class period. ECF No. 18-4, ¶¶5-6. The fact that Ft. Lauderdale and Puerto Rico Retirement lack a preexisting relationship weighs against aggregation. *See Ophthotech*, 2018 WL 1307285, at *8 (rejecting proposed lead plaintiff group, in part, because "[t]here is no evidence that the . . . Group had any prior relationship or engaged in any cooperative efforts, and their only commonality is that each member of the plaintiff group invested in Ophthotech stock during the Class Period."); *Jakobsen v. Aphria, Inc.*, No. 18 CIV. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) (proposed lead plaintiff group declaration that was "silent" on whether the group was formed independent of counsel and "failed to meet their evidentiary burden to prove that their grouping was not the product of lawyer-driven litigation").

**B.    Ft. Lauderdale and Puerto Rico Retirement Have Failed to Show that They Are Actively Involved in the Litigation**

Aggregation is not appropriate unless the proposed group comes forward with evidence they are actively involved in the litigation. *Aphria*, 2019 WL 1522598, at *3. Ft. Lauderdale and Puerto Rico Retirement have failed to carry their burden on this point, submitting only conclusory

assertions that they "communicated regarding the merits of this action" and "the status of the proceedings." ECF No. 18-4, ¶7. This is not sufficient. *See Id.*, at *3 (rejecting aggregation, in part, because the movant group's joint declaration "barely allege[s] any involvement in the litigation thus far," where the joint declaration stated only that the movants "agreed to file a joint motion for appointment as lead plaintiff" after "review[ing] a complaint" and "discuss[ing] the merits of the case and [their] losses with [their] counsel.").

Making matters worse, the minimal involvement that Puerto Rico Retirement has had with this Action demonstrates an inability to effectively oversee counsel or this litigation. Specifically, Puerto Rico Retirement's sworn certification in this Action lists five cases in which it sought to serve as lead plaintiff. ECF No. 18-2, ¶5.[2] However, that certification omitted two cases - ***filed this year*** - in which Puerto Rico Retirement sought appointment as lead plaintiff. *See Porter v. Graftech Int'l Ltd.*, No. 1:24-cv-00154 (N.D. Ohio), ECF No. 20, attached to the Declaration of Thomas L. Laughlin, IV in Support of Fulton County Employees' Retirement System's Opposition to Competing Lead Plaintiff and Lead Counsel Motion (the "Laughlin Decl.") as Ex. A; *Shapiro v. Assertio Holdings, Inc.*, No. 1:24-cv-00169 (N.D. Ill.), ECF No. 24, attached to the Laughlin Decl. as Ex. B. Inexplicably, the same counsel represents Puerto Rico Retirement here as well as in *Graftech*.

The errors in Puerto Rico Retirement's certification cast doubt on its assertion in the Joint Declaration that it will effectively manage counsel during this litigation. ECF No. 18-4, ¶¶8-9.

---

[2] Puerto Rico Retirement's certification identifies the following cases: *Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168-EJD (N.D. Cal.); *Schneider v. Natera, Inc.*, No. 1:22-cv-00398-LY (W.D. Tex.); *Zornberg v. NAPCO Security Technologies, Inc.*, No. l:23-cv-06465-BMC (E.D.N.Y.); *Allegheny County Employees' Retirement System v. AdaptHealth Corp*, No. 2:23-cv-04104 (E.D. Pa.); and *North Collier Fire Control & Rescue District Firefighters' Pension Plan v. Mercury Systems, Inc.*, No. 1:23-cv-13065-WGY (D. Mass.). ECF No. 18-2, ¶5.

Moreover, courts in this District have held that these types of fundamental errors speak to a level of carelessness that calls into question the movant's adequacy and ability to monitor its counsel. *See*, *e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 Civ. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("[T]his Court finds that Kaintz's careless errors weigh heavily against his appointment as lead plaintiff."); *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *6 n.7 (S.D.N.Y. Dec. 5, 2019) ("The certification submitted by Hulaj with his original motion papers 'erroneously omitt[ed] to disclose that Hulaj previously sought appointment in [a prior] action.' Although Hulaj submits that this was 'due to a clerical error' in which 'a different document was ultimately filed on his behalf,' this error 'nonetheless speaks to a level of carelessness,' and causes me 'to doubt whether [Hulaj] possesses the necessary adequacy and sophistication to be lead plaintiff[.]'"); *Karp v. Diebold Nixdorf, Inc.*, No. 19 CIV. 6180 (LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("Taken together, these issues indicate to the Court a 'certain carelessness about detail that undermines the adequacy' of the Aroras as a lead plaintiff in a complex securities class action. The Court thus finds that the errors in the Aroras' submissions further 'militate against appointment and render [them] inadequate to serve as lead plaintiff.'"). As Judge Cote observed in rejecting a lead plaintiff applicant based on his omission from his certification of an action in which he moved for lead, these errors "do[] affect something substantively, that is, [the lead plaintiff applicant's] ability to focus on th[e] litigation and provide oversight of counsel in an appropriate way as a representative of the class." Transcript of Lead Plaintiff Hearing at 6, *In re: Longfin Corp., Sec. Litig.*, No. 1:18-cv-02933 (S.D.N.Y. June 25, 2018), attached to Laughlin Decl. as Ex. C.

**C.      Ft. Lauderdale and Puerto Rico Retirement Lack Any Concrete Plans to Cooperatively Manage this Litigation**

With respect to how Ft. Lauderdale and Puerto Rico Retirement will cooperatively manage this litigation if appointed as a lead plaintiff group, the Joint Declaration offers only the flimsy assertion that they will "continue to supervise counsel and actively oversee the prosecution of the action." ECF No. 18-4, ¶9. This is patently insufficient under the case law.

Courts in this District require evidence beyond boilerplate statements explaining how a lead plaintiff group will manage the litigation and oversee their counsel to protect the interests of absent class members. The "conclusory assurances" in the Joint Declaration "are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation." *FXCM*, 2015 WL 7018024, at *4 (rejecting grouping where declaration stated only that proposed lead plaintiffs would "confer via phone and/or email as necessary to ensure that we are able to independently communicate and make timely decisions."); *see Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation."); *BRF*, 2018 WL 3217412, at *3 (rejecting as "vague and conclusory" the unvarnished assertion that group members "have established procedures for overseeing the progress of the litigation and communicating regularly between ourselves and our counsel").

Crucially, the Joint Declaration does not describe any mechanisms agreed to by Ft. Lauderdale and Puerto Rico Retirement for resolving disputes among them—an inexplicable omission from a group of two, where a disagreement between Ft. Lauderdale and Puerto Rico

11

Retirement about strategic issues, including settlement, could result in a deadlock. *See Petrobras*, 104 F. Supp. 3d, at 623 ("The three states had, for example, no agreement in place regarding the resolution of disputes amongst themselves, the division of authority and responsibility between the two law firms, or the resolution of discrepancies in their three separate retainer agreements. Thus, not only was the State Retirement Systems group clearly assembled for the sole purpose of participating in this litigation, but also it failed to show that it would act with the cohesion necessary to prosecute the case effectively.").

> **D.** **The Evidence Shows that Puerto Rico Retirement Cannot Function as a Sophisticated Institutional Plaintiff in This Action**
>
> **1.** **Puerto Rico Retirement's Grave Financial Situation Raises Serious Questions About Its Ability to Effectively Serve as Lead Plaintiff**

Movant Puerto Rico Retirement is the retirement system for the University of Puerto Rico (the "University").[3] For the year ended June 30, 2023, the employee contribution rate to Puerto Rico Retirement was 9% of annual pay, while the University's average contribution rate was 39.2% of annual payroll. *See* University of Puerto Rico's Financial Statements and Reports and Schedule Required by Uniform Guidance for the year ended June 30, 2023 at 88, attached to the Laughlin Decl. as Ex. I. Accordingly, the University's contributions are integral to Puerto Rico Retirement's solvency.

---

[3] Puerto Rico moves here as the "Trust of the Retirement System of the UPR" but lists on its certification cases in which it moved as "the University of Puerto Rico Retirement System." ECF No. 18-2, ¶ 5; Exs. A; B; *Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168, No. 26-3, attached to Laughlin Decl. as Ex. D; *Schneider v. Natera, Inc.*, No. 1:22-cv-00398, No. 17-2, attached to Laughlin Decl. as Ex. E; *Zornberg v. NAPCO Security Technologies, Inc.*, No. l:23-cv-06465, No. 10-4, attached to Laughlin Decl. as Ex. F; *Allegheny County Employees' Retirement System v. AdaptHealth Corp*, No. 2:23-cv-04104, No. 16-4, attached to Laughlin Decl. as Ex. G; and *North Collier Fire Control & Rescue District Firefighters' Pension Plan v. Mercury Systems, Inc.*, No. 1:23-cv-13065, No. 17-2, attached to Laughlin Decl. as Ex. H. Given this, it appears undisputed that Puerto Rico Retirement is the same entity (or at least stands in the shoes of) the University of Puerto Rico Retirement System.

Unfortunately, the University is in dire fiscal straits.  In 2022, the Commonwealth of Puerto Rico (the "Commonwealth") released an audit of the University that found that "there is substantial doubt about [the University's] ability to continue as a going concern for" several reasons, including that:

- The University had an accumulated deficit position of approximately $1.7 billion as of June 30, 2022.

- The University has had recurring operating losses and has been highly dependent on the Commonwealth's appropriations to finance its operations and has historically relied on the Government Development Bank for Puerto Rico for liquidity.  Approximately 40% of the University's total revenues were derived from Commonwealth appropriations for the year ended June 30, 2022.  The University's ability to continue receiving similar operational support from the Commonwealth and obtaining external financing is uncertain.

- The University has limited ability to raise operating revenues due to the economic and political related challenges of maintaining enrollment and increasing tuition.

*See* Commonwealth of Puerto Rico, Basic Financial Statements and required Supplementary Information at 78-79 (June 30, 2022), attached to Laughlin Decl. as Ex. J.

The University's independent auditors concur with the Commonwealth's assessment, concluding in March 2024 that "the University is highly dependent of the Commonwealth of Puerto Rico (the Commonwealth) appropriations to finance its operations, has net capital deficiency, its debt is under a standstill agreement, and has stated that substantial doubt exists about the University's ability to continue as a going concern."  Ex. I, at 2.

Making matters worse, in 2023, the University proposed creating an alternate, defined contribution retirement plan that, if implemented, would effectively fatally hamper Puerto Rico Retirement's fiscal condition because employee contributions would be diverted to that new retirement plan, rather than to Puerto Rico Retirement's coffers.  In a statement given to *The San Juan Daily Star*, the President of the retirement system ominously warned that:

> The solvency of the UPR Retirement System is not only considered in the assets it has, but also in the contributions it receives . . . If any of these variables, which are the contributions of the participants, the employer and the return on investments, is seen to be at risk or has a problem that is not corrected within a reasonable time, this causes damage to the future stability of the trust. The [University] knows this very well and that is why it is delaying payments, on purpose, so that it appears in the state financial [reports] as if we had no solvency . . . .

Richard Gutiérrez, *Pay-Up Time*, THE SAN JUAN DAILY STAR, Aug. 16, 2023, at 3, attached to Laughlin Decl. as Ex. K.  The story also revealed that the University has already withheld "a $58.7 million debt" that has forced Puerto Rico Retirement to "sell $8 million in investment assets in order to cover its needs, including loan disbursements and supplier payments."  *Id* at 2-3.

Faced with this existential threat, Puerto Rico Retirement sued the University to prevent the creation of the alternate retirement plan.  In its complaint, Puerto Rico Retirement itself postulated its imminent insolvency if the University were to continue to limit its contributions to the existing retirement system:

> [I]f the UPR continues breaching its employer's contribution to the Retirement System, as calculated and recommended by the actuary, it would jeopardize the solvency of the Retirement System . . . The risk to the Retirement System is imminent in light of the accrued and operational deficit reflected by the last financial statement of the UPR, which also contains information as to the auditors' doubts as to whether UPR can continue operating.

Complaint and Request for Permanent Injunction and Declaratory Judgment at ¶31, *Ret. Sys. of the UPR v. UPR*, No. SJ2023CV04406 (P.R. C.I.F.), Dkt. No. 1, attached to Laughlin Decl. as Ex. L.  The lawsuit remains pending, leaving Puerto Rico Retirement operating under a sword of

14

Damocles as to its continued existence.  *See Univ. of Puerto Rico Ret. Bd. v. Univ. of Puerto Rico*, No. 23-cv-1326 (D.P.R.), ECF No. 24.

A court in this District has previously declined to appoint Puerto Rico Retirement as lead plaintiff owing to its financial difficulties and precarious future, and the result should be no different here.  In *Diebold Nixdorf*, the court rejected a two-member lead plaintiff group that included Puerto Rico Retirement because in the "Court's eyes, the UPR System's financial predicament undermines the presumption that the UPR/Detroit Movants are the most adequate plaintiff."  2019 WL 5587148, at *5.  The court explained that the retirement system was "highly dependent on funding from the University," which, in turn, was highly dependent on funding from the Commonwealth and that as the Commonwealth's "financial collapse drags onward, there appears to be a material risk that these funding constraints continue to grow more severe."  *Id.*[4] The reasoning of *Diebold Nixdorf* is just as apt today as when it was decided five years ago, given that the financial conditions of the Commonwealth, the University, and Puerto Rico Retirement remain precarious at best, and Puerto Rico Retirement faces an existential threat to its very existence due to the University's alternate pension plan.

Puerto Rico Retirement's "probable insolvency" creates both a distraction and an acute risk that the litigation in this Court may need to be stayed pending its unwinding or substitution.  Puerto Rico Retirement may also be inclined to pursue a litigation strategy that would prioritize its need for immediate liquidity over the greater interests of the class at large.  The "financial turmoil

---

[4]     A court in this District has similarly rejected lead plaintiff appointment for another Commonwealth-affiliated entity because of fiscal concerns.  *See Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016) (rejecting Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA") as lead plaintiff, including because of "the fiscal crisis in Puerto Rico and the high probability that ERS-PREPA would be embroiled, even if indirectly, in litigation of an all-consuming variety.").

surrounding [Puerto Rico Retirement] will practically impede [its] ability to manage this litigation," meaning that "there is a non-speculative risk that [Puerto Rico Retirement] will not be an adequate lead plaintiff." *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *5.

> **2.    Puerto Rico Retirement's High Executive Director Turnover Undercuts Its Ability to Serve as a Sophisticated Lead Plaintiff**

The high turnover rate of Puerto Rico Retirement's Executive Directors also raises questions as to whether its internal tumult is conducive to the effective management of complex litigation, or if it contributed to Puerto Rico Retirement's most recent errors (*i.e.*, the material omissions from its certifications). In the last ten months, Puerto Rico Retirement has had three different Executive Directors sign certifications: (1) Laura Santa Sánchez, (2) Ricardo E. Curet Agrón, and (3) Cristina Alcaraz. *See* ECF No. 18-2; Ex. A; and Ex. B, respectively.

The lack of steady, long-term leadership in light of Puerto Rico Retirement's frequent, sometimes chaotic, lead plaintiff filings appears to be probable. As previously discussed, Puerto Rico Retirement has sought leadership of securities cases seven times in the last three years, which is an unusually high rate. Adding to Puerto Rico Retirement's growing list of errors, Puerto Rico Retirement even actively worked against itself by filing two competing lead plaintiff motions after inexplicably retaining two different firms. *See Zornberg*, No. 1:23-cv-06465 (E.D.N.Y.), ECF Nos. 10 & 17.

> **E.    The Proposed Grouping of Ft. Lauderdale and Puerto Rico Retirement Appears Driven by Their Respective Counsel**

Courts in this District frequently hold that investor groups are inadequate class representatives when the group "appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together 'in the hope of thereby becoming the biggest loser for PSLRA purposes.'" *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (citing *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y

16

2005)); *accord Elstein v. Net1 UEPS Techs., Inc.*, No. 13 CIV. 9100(ER), 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014) ("despite [investor group's] assurances that they are united in their goals and objectives and are willing and able to serve the Class, that is not enough to succeed on a lead plaintiff motion"); *Razorfish*, 143 F. Supp. 2d at 309 ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."). That appears to be the case here.

Ft. Lauderdale and Puerto Rico Retirement's request for approval of Co-Lead Counsel evidences that their proposed grouping is primarily driven by their respective counsel, rather than by the institutions themselves. Ft. Lauderdale and Puerto Rico Retirement have no connection to each other and have not articulated any reason why their joint appointment is preferable. Their group seems to have been formed by their respective counsel, who are each seeking appointment as Co-Lead Counsel. This cuts against aggregation. *See Rosian v. Magnum Hunter Res. Corp.*, No. 13 CIV. 2668(KBF), 2013 WL 5526323 (S.D.N.Y. Oct. 7, 2013) ("Accordingly, the Court finds insufficient evidence that the members of the group will act collectively and separately from their lawyers. The fact that the Group proposes the appointment of two law firms as co-lead counsel to represent it does not help its cause."); *In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 579502, at *5 (S.D.N.Y. Mar. 6, 2009) ("The fact that the Adams Family and Northumberland also propose to appoint two law firms to represent the putative class, with another firm to act as 'liaison counsel,' underscores this appearance (of a 'lawyer-driven arrangement')."); *see also Cook v. Allergn PLC*, No. 18 Civ. 12089 (CM), 2019 WL 1510894, at *4 (S.D.N.Y. Mar. 21, 2019) ("However, this court is not interested in appointing co-lead counsel in this matter. Unless there is some special reason why the services of two firms are needed, the

appointment of co-lead counsel tends to inflate legal fees—a result this court is particularly anxious to avoid.").

### III.    IN ADDITION, PUERTO RICO RETIREMENT IS AN INADEQUATE LEAD PLAINTIFF AND ITS MOTION FOR APPOINTMENT SHOULD BE DENIED ON THAT SEPARATE BASIS

Even if Ft. Lauderdale and Puerto Rico Retirement were an appropriate Lead Plaintiff group to allow aggregation (which they are not), Puerto Rico Retirement is ***independently*** inadequate as a Lead Plaintiff and thus could not properly be considered as part of any such group.

"A class representative, once designated by the Court, is a fiduciary for the absent class members." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998). Thus, "the proof needed to rebut the [lead plaintiff] presumption need not establish a plaintiff's inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy." *Diabat*, 2024 WL 4566372, at \*4; *see also Batter v. Hecla Mining Co.*, No. 19-cv-05719 (ALC), 2020 WL 1444934, at \*7 (S.D.N.Y. Mar. 25, 2020) (same); *Schaffer*, 2016 WL 3566238 (same). Here, the overwhelming evidence strongly suggests that the "potential" that Puerto Rico Retirement "will not fairly and adequately protect the interests of the class." *Diabat*, 2024 WL 4566372, at \*4. Accordingly, it should not be permitted to serve as Lead Plaintiff, whether as part of a group or otherwise.

### A.    Puerto Rico Retirement Cannot Effectively Oversee Counsel

Puerto Rico Retirement has made errors in its filings in this Action as well as others. As discussed above, *see supra*, §II.B, this District has consistently determined that repeated errors speak to a level of carelessness that calls into sharp question the movant's adequacy. *See, e.g.*, *DraftKings Inc.*, 2021 WL 5282006, at \*9 ("Had Kaintz been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place. Minor or not—and the Court by no means finds the numerous and varied errors

18

minor—the errors nonetheless speak[ ] to a level of carelessness that rightly calls into doubt Kaintz's adequacy to be lead plaintiff."); *Canada Goose Holdings Inc.*, 2019 WL 6617981, at \*6, n.7 ("The certification submitted by Hulaj with his original motion papers erroneously omitt[ed] to disclose that Hulaj previously sought appointment in [a prior] action.  Although Hulaj submits that this was due to a clerical error in which a different document was ultimately filed on his behalf, this error nonetheless speaks to a level of carelessness, and causes me to doubt whether [Hulaj] possesses the necessary adequacy and sophistication to be lead plaintiff."); *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at \*6 ("errors in [lead plaintiff applicants'] submissions . . . militate against appointment and render [them] inadequate to serve as lead plaintiff."); *see also Ophthotech Corp.*, 2018 WL 1307285, at \*9 ("The errors in his submissions, however, militate against appointment and render him inadequate to serve as lead plaintiff under Rule 23's adequacy requirement."). Puerto Rico Retirement failed to include two cases—both filed this year—in which it had moved for lead plaintiff.  These repeated errors plainly evidence Puerto Rico Retirement's failure to effectively monitor itself, its counsel, or both.

**B.      Puerto Rico Retirement Is Inadequate Because Its Potential Insolvency Will Jeopardize the Class**

As discussed above, *see supra*, §II.D.1, Puerto Rico Retirement is in dire fiscal straits and faces potential insolvency due to the University's alternate retirement plan, as Puerto Rico Retirement itself admitted in its lawsuit against the University seeking to halt that plan.  Ex. L, ¶31 ("[I]f the UPR continues breaching its employer's contribution to the Retirement System, as calculated and recommended by the actuary, it would jeopardize the solvency of the Retirement System . . . The risk to the Retirement System is imminent in light of the accrued and operational deficit reflected by the last financial statement of the UPR, which also contains information as to the auditors' doubts as to whether UPR can continue operating."); *see also* Ex. K.

In *Diebold Nixdorf*, a court in this District already determined that Puerto Rico's "probable insolvency" creates both a distraction and an acute risk that the litigation in this Court may need to be stayed pending Puerto Rico Retirement's unwinding or substitution. Specifically, the "financial turmoil surrounding [Puerto Rico Retirement] will practically impede [its] ability to manage this litigation," meaning that "there is a non-speculative risk that [Puerto Rico Retirement] will not be an adequate lead plaintiff." *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *5.[5]

Accordingly, Puerto Rico Retirement's "imminent" insolvency is, at best, a needless distraction, and at worst, a potentially fertile avenue of attack for Defendants, either of which would undoubtedly needlessly jeopardize the Class and render Puerto Rico Retirement inadequate.

## CONCLUSION

For all the foregoing reasons, Fulton County Retirement opposes the Lead Plaintiff motion of movant Ft. Lauderdale and Puerto Rico Retirement and respectfully requests that the Court: (1) appoint Fulton County Retirement as Lead Plaintiff on behalf of the Class; (2) approve Fulton County Retirement's selection of counsel, Scott+Scott, as Lead Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: November 8, 2024 **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (NY 4471975)
Matthew A. Peller (NY 4513412)

---

[5] Although the Puerto Rico Retirement was recently appointed lead plaintiff in *Porter v. Graftech International Ltd.*, No. 1:24 CV 00154, 2024 WL 2189642 (N.D. Ohio May 15, 2024), that out-of-Circuit decision is distinguishable from the lead plaintiff question here for several reasons. First, in *Graftech*, Puerto Rico Retirement sought appointment as a sole lead plaintiff, and not as part of a group. As shown above, courts in this District have made clear that proposed lead-plaintiff groups should be highly scrutinized. Second, in *Graftech*, Puerto Rico Retirement was competing for lead plaintiff against an individual investor, rather than, as here, another institutional investor (Fulton County Retirement). Third, *Graftech* is at odds with decisions in this District that have explicitly held that Puerto Rico Retirement's fiscal troubles render it inadequate. *See Diebold Nixdorf*, 2019 WL 5587148, at *5.

Nicholas S. Bruno (NY 5953245)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
mpeller@scott-scott.com
nbruno@scott-scott.com

*Counsel    for    Lead    Plaintiff    Movant
Fulton County Employees' Retirement System and
Proposed Lead Counsel for the Class*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2024, I caused the foregoing to be electronically filed

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the email addresses denoted on the Electronic Mail Notice List.

*/s/  Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
