# EXHIBIT E

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATRICIA A. SHENK,<br><br>Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff(s),<br><br>v.<br><br>MALLINCKRODT PLC,<br><br> and MARK TRUDEAU,<br><br>       Defendants. | No.: 1:17-cv-00145-EGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE INSTITUTIONAL INVESTORS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS, AND APPROVAL OF COUNSEL** |
| JYOTINDRA PATEL,<br><br> Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff(s),<br><br>v.<br><br>MALLINCKRODT PLC,<br><br> and MARK TRUDEAU,<br><br>       Defendants. | No.: 1:17-cv-00171-EGS |

*-caption continued on following page-*

|  | |  |
|---|---|---|
| AMY T. SCHWARTZ & STEPHEN A. SCHWARTZ,<br><br>Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiff(s),<br><br>v.<br><br>MALLINCKRODT PLC,<br><br> and MARK TRUDEAU,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.: 1:17-cv-00447-EGS |
| FULTON COUNTY EMPLOYEES' RETIREMENT SYSTEM,<br><br>Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiff(s),<br><br>v.<br><br>MALLINCKRODT PLC,<br><br>MARK TRUDEAU,<br><br>MATTHEW K. HARBAUGH,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.: 1:17-cv-00534 |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT.............................................................................................................................6

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
        PURPOSES..................................................................................................................6

    B.    THE INSTITUTIONAL INVESTORS SHOULD BE APPOINTED
        LEAD PLAINTIFFS......................................................................................................7

        1.    The Institutional Investors are Willing to Serve as Class
            Representatives ..................................................................................................9

        2.    The Institutional Investors Have the "Largest Financial Interest"..............9

        3.    The Institutional Investors Otherwise Satisfy the Requirements of
            Rule 23 of the Federal Rules of Civil Procedure ......................................10

        4.    The Institutional Investors Will Fairly and Adequately Represent
            the Interests of the Class and are Not Subject to Unique Defenses ..........13

    C.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE
        APPROVED ...............................................................................................................13

CONCLUSION........................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................12

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ...............................................................................................11

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) .......................................................................................7

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006)......................................................................................11, 12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) .......................................................................................6

*Danis v. USN Communs., Inc.*,
   189 F.R.D. 391 (N.D. Ill. 1999)......................................................................................11

*Fischler v. AmSouth Corp.*,
   176 F.R.D. 583 (M.D. Fla. 1997).....................................................................................10

*Gluck v. Cellstar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ..................................................................................10

*\*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996) .....................................................................................10

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) .........................................................................................2

*In re GE Sec. Litig.*, Case No. 09-1951 (DC),
   2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ................................................7

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................10

*\*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................................................10

*\*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................................................6

*In re: XM Satellite Radio Holdings Sec. Litig.,*
    237 F.R.D. 13 (D.D.C. Aug. 1, 2006)................................................................11

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir. 1990)......................................................................6

*\*Malcolm v. Nat'l. Gypsum Co.,*
    995 F.2d 346 (2d Cir. 1993).......................................................................6

*\*Osher v. Guess?, Inc.,*
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..........................................13

*Plumbers Local #200 Pension Fund v. The Washington Post Co.,*
    274 F.R.D. 33 (D.D.C. 2011)......................................................................8

*Riordan v. Smith Barney,*
    113 F.R.D. 60 (N.D. Ill. 1986)...................................................................12

## Statutes

*15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................. *passim*

*Section 21D(a)(3) of the Securities Exchange Act of 1934........................................1

## Rules

*Federal Rules of Civil Procedure Rule 23 .................................................... *passim*

Federal Rules of Civil Procedure Rule 42 ....................................................1, 6, 11

iii

Movants Iron Workers Local 580 Pension Fund ("Iron Workers"), Nova Scotia Health Employees' Pension Plan ("Nova Scotia"), and Fulton County Employees' Retirement System ("Fulton County," and together with Iron Workers and Nova Scotia, the "Institutional Investors" or "Movants") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Institutional Investors as Lead Plaintiffs on behalf of all persons and entities that purchased or otherwise acquired the securities of Mallinckrodt plc ("Mallinckrodt" or the "Company") between July 14, 2014 and January 18, 2017, both dates inclusive (the "Class Period"); (3) approving Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") and Saxena White P.A. ("Saxena White") as Co-Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In that regard, the Court is required to determine which movant or group of movants has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movants have made a *prima facie* showing that they are typical and adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

1

Case 1:17-cv-00145-EGS   Document 20   Filed 03/27/17   Page 9 of 21

The Institutional Investors are the "most adequate plaintiff" and should be appointed Lead Plaintiffs. The Institutional Investors sustained losses of $1,327,254 in connection with their Class Period investments in Mallinckrodt securities. The Institutional Investors' losses are believed to be the largest among purported class members seeking appointment as Lead Plaintiff that otherwise satisfy the requirements of the PSLRA and the Federal Rules of Civil Procedure.[1] Movants are unaware of any other Class member that has filed an action or an application for appointment as Lead Plaintiff that sustained greater financial losses and meets the applicable requirements.[2]

In addition to asserting the largest financial interest, the Institutional Investors readily satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class members.

Moreover, the Institutional Investors, which collectively manage billions of dollars in assets, are the ideal Lead Plaintiffs contemplated by the PSLRA. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("the PSLRA was designed to favor institutional investors"). Indeed, the Institutional Investors are paradigmatic Lead Plaintiffs under the PSLRA because its members have extensive experience serving as fiduciaries, and are sophisticated institutional investors with a substantial financial interest in the litigation, which provides the incentive and ability to effectively and efficiently supervise and monitor counsel. Further, the Institutional

---

[1] Movants' transactions in Mallinckrodt securities during the Class Period are set forth in the certifications attached as Exhibit B to the Declaration of Jeremy A. Lieberman in Support of Motion of the Institutional Investors for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel ("Lieberman Decl.").

[2] A chart setting forth the Institutional Investors' losses is attached as Exhibit C to the Lieberman Decl.

Investors fully understand the Lead Plaintiffs' obligations to the Class under the PSLRA and, as demonstrated herein, are willing and able to undertake the responsibilities entailed in acting as Lead Plaintiffs to guarantee the vigorous prosecution of this action.

The Institutional Investors have also demonstrated their adequacy through their selection of Pomerantz and Saxena White, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Co-Lead Counsel for the Class, and have selected Cohen Milstein, a similarly experienced law firm, to serve as Liaison Counsel for the Class. Accordingly, based on the Institutional Investors' substantial financial interest and their demonstrated commitment and ability to jointly oversee this action in a cohesive manner, the Institutional Investors respectfully request that the Court appoint them Lead Plaintiffs and otherwise grant their motion.

### STATEMENT OF FACTS

Mallinckrodt plc develops, manufactures, and markets specialty pharmaceutical products and diagnostic imaging agents. The Company specializes in the manufacturing of pain management medications. Mallinckrodt offers its products to major wholesalers and retail drug store chains around the world.

Founded in 1840, the Company is headquartered in Surrey, the United Kingdom, with U.S. headquarters in St. Louis, Missouri. Mallinckrodt's stock trades on the New York Stock Exchange under the ticker symbol "MNK."

On August 14, 2014, Mallinckrodt acquired Questcor Pharmaceuticals, Inc. ("Questcor") in a $5.6 billion transaction. As a result of the acquisition, Mallinckrodt added HP Acthar Gel ("Acthar"), an injectable medication made from pigs' pituitary glands, to its drug portfolio.

3

Acthar is the only approved therapeutic preparation of adrenocorticotropic hormone ("ACTH") in the U.S., and is approved by the U.S. Food and Drug Administration ("FDA") as a treatment for 19 different conditions, including infantile spasms and difficult-to-treat autoimmune and inflammatory conditions.

In June 2013, Questcor had acquired the U.S. rights to market a synthetic ACTH drug, Synacthen Depot ("Synacthen"), from Novartis International AG.  Although not stated at the time, Questcor acquired Synacthen for the sole purpose of preventing its competitors from obtaining FDA approval for an alternative ACTH treatment, thereby maintaining its U.S. monopoly on ACTH treatments.

With Achtar's only potential competition sidelined, Mallinckrodt was able to increase the price of the drug exponentially.  Between 2001 and 2016, a vial of Acthar rose in price from a cost of $40 to more than $34,000—an astonishing increase of 85,000%.

Acthar is now one of the most expensive drugs on the market, and is currently the single most expensive drug reimbursed by both Medicare and Medicaid.  As a result of its acquisition of Questcor, Mallinckrodt obtained the exclusive rights to both Acthar and Synacthen, and Acthar became an important revenue source for Mallinckrodt, representing 34% of the Company's overall sales in 2016.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Acthar's monopoly status as the only FDA-approved ACTH preparation was the product of unlawful anti-competitive practices; (ii) its increasing reliance on Medicare and Medicaid meant that the Company's monopolistic Acthar revenue would be threatened if the government took action to limit the price

4

paid for this drug by taxpayers; and (iii) as a result of the foregoing, Mallinckrodt's public statements were materially false and misleading at all relevant times.

On November 16, 2016, Citron Research published a report (the "Citron Report") accusing Mallinckrodt and its Chief Executive Officer ("CEO"), Mark Trudeau, of downplaying the Company's reliance on Medicare and Medicaid for Acthar revenue. According to the Citron Report, based on information published by the Centers for Medicare and Medicaid Services ("CMS") (a federal agency within the U.S. Department of Health and Human Services that administers various government-sponsored healthcare programs) on November 14, 2016, Medicare paid approximately $504 million and Medicaid paid $144.6 million for Acthar in 2015, and that these payments collectively amounted to 61.32% of Mallinckrodt's total Acthar revenue in 2015. Individually, Medicare paid approximately 48% of Mallinckrodt's 2015 revenue from Acthar. As the Citron Report revealed, Medicare spending in 2014 on Acthar totaled over $391 million, representing over 45% of Acthar sales. The Citron Report further revealed that combined 2014 Medicare and Medicaid spending on Acthar was over $518 million, representing over 60% of Acthar sales. These numbers, Citron alleged, demonstrated that Mr. Trudeau lied when he indicated that Medicare constituted only "a little bit higher" than 25% of Acthar sales.

Following the Citron Report, Mallinckrodt's share price fell $8.15, or 12.02%, to close at $59.65 on November 16, 2016.

On November 29, 2016, during a conference call, Trudeau advised investors that "Acthar now represents a significantly greater proportion of our operating income than one-third."

On this news, Mallinckrodt's share price fell $5.25, or 9.1%, to close at $52.42 on November 29, 2016.

On January 18, 2017, the Federal Trade Commission ("FTC") announced that Mallinckrodt had agreed to pay $100 million in connection with a joint settlement with the FTC and several states concerning charges that the Company's efforts to stifle competing ACTH drugs had violated U.S. antitrust laws.

On news of the settlement, Mallinckrodt's share price fell $2.89, or 5.85%, to close at $46.53 on January 18, 2017.

As a result of Defendants' false and/or misleading statements, Mallinckrodt securities traded at inflated prices. However, after disclosure of Defendants' false and/or misleading statements, Mallinckrodt's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a). See also Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l. Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).

6

Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, Case No. 09-1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Mallinckrodt's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

**B.    THE INSTITUTIONAL INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFFS**

There is a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). "Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active

7

role in directing and overseeing the litigation." *Plumbers Local #200 Pension Fund v. The Washington Post Co.,* 274 F.R.D. 33, 35 (D.D.C. 2011).

The Institutional Investors should be appointed Lead Plaintiffs because they have the largest financial interest in the Action and otherwise meet the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Institutional Investors satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

8

### 1.    The Institutional Investors are Willing to Serve as Class Representatives

On January 24, 2017 counsel for plaintiff in the first of the above-captioned actions to be filed caused a notice to be published over *PR Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the Defendants herein, and advised investors of Mallinckrodt securities that they had until March 27, 2017 to file a motion to be appointed as Lead Plaintiff.  *See* Lieberman Decl., Ex. A.

The Institutional Investors have filed the instant motion pursuant to the Notice, and have attached Certifications attesting that they are willing to serve as representatives for the Class, and provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, the Institutional Investors satisfy the first requirement to serve as Lead Plaintiffs of the Class.

### 2.    The Institutional Investors Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii).   As set forth herein, the Institutional Investors purchased 52,476 shares of Mallinckrodt common stock during the Class Period at prices artificially inflated by the materially false and misleading statements issued by Defendants.  In addition, the Institutional Investors incurred substantial losses from their transactions in Mallinckrodt securities during the Class Period totaling $1,334,296 when corrective disclosures removed the inflation caused by the Defendants' fraud.  *See* Lieberman Decl., Exs. B and C.

To the best of the Institutional Investors' knowledge, there are no other applicants who have sought, or are seeking, Lead Plaintiff appointment that have a larger financial interest arising from transactions in Mallinckrodt common stock during the Class Period.  Accordingly, the Institutional Investors have the largest financial interest of any qualified movants seeking Lead

9

Plaintiff status, and are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Because the Institutional Investors possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Institutional Investors Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In determining whether a Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. AmSouth Corp.*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

The typicality requirement "asses[es] whether the action can be efficiently maintained as a class and whether the [movant has] incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *In re: XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. Aug. 1, 2006) (quotations and citations omitted).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of the Institutional Investors are typical of those of the Class. The Institutional Investors allege, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Mallinckrodt, or omitted to state material facts necessary to make the statements they did make not misleading. The Institutional Investors, as did all members of the Class, purchased Mallinckrodt securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy the typicality requirement of Rule 23(a)(3).

11

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Institutional Investors are adequate representatives for the Class. There is no antagonism between the interests of the Institutional Investors and those of the Class, and their losses demonstrate that they have a sufficient interest in the outcome of this litigation. Nova Scotia is one of the largest pension plans in the Canadian province of Nova Scotia, providing service to over 30,000 active members, with $5.34 billion in assets under management. Iron Workers provides pension and health benefits to both active and retired participants throughout New York City and Long Island, with $25 million in assets under management. Fulton County provides pension benefits to the employees of Fulton County, Georgia, with more than $1.3 billion in assets under management. As such, the Institutional Investors are sophisticated institutional investors with sufficient resources to adequately litigate the instant action and supervise Lead Counsel.

Moreover, the Institutional Investors are the very sort of Lead Plaintiff envisioned by Congress in their enactment of the PSLRA—a sophisticated group of institutional investors with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

12

Moreover, the Institutional Investors have demonstrated their adequacy through their selection of Pomerantz and Saxena White as Lead Counsel, and their selection of Cohen Milstein as Liaison Counsel to represent the Class in this action. As discussed more fully below, Pomerantz, Saxena White, and Cohen Milstein are highly qualified and experienced in the area of securities class action litigation.

### 4. The Institutional Investors Will Fairly and Adequately Represent the Interests of the Class and are Not Subject to Unique Defenses

The presumption in favor of appointing the Institutional Investors as Lead Plaintiffs may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of the Institutional Investors to fairly and adequately represent the Class has been discussed above. The Institutional Investors are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, the Institutional Investors should be appointed Lead Plaintiffs for the Class.

### C. THE INSTITUTIONAL INVESTORS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

13

Here, the Institutional Investors have selected Pomerantz and Saxena White as Co-Lead Counsel and Cohen Milstein as Liaison Counsel for the Class. All three firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes. *See* Lieberman Decl., Exs. D-F. As a result of the firms' extensive experience in litigation involving issues similar to those raised in the Related Actions, the Institutional Investors' counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead and Liaison Counsel by the Institutional Investors, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Institutional Investors respectfully request that the Court issue an Order (1) consolidating the Related Actions; (2) appointing the Institutional Investors as Lead Plaintiffs for the Class; (3) approving Pomerantz and Saxena White as Co-Lead Counsel and Cohen Milstein as Liaison Counsel for the Class; and (4) granting such other relief as the Court may deem to be just and proper.

Dated:   March 27, 2017

Respectfully submitted,

*/s/ Daniel S. Sommers*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (DC Bar Number: 225623)
Daniel S. Sommers (DC Bar Number: 416549)
Elizabeth A. Aniskevich (DC Bar Number: 994603)
1100 New York Avenue, N.W.
Washington, DC 20005

14

Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
      dsommers@cohenmilstein.com
      eaniskevich@cohenmilstein.com

*Counsel for Movants and*
*Proposed Liaison Counsel for the Class*


**POMERANTZ LLP**
Jeremy A. Lieberman
Matthew L. Tuccillo
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      mltuccillo@pomlaw.com
      ahood@pomlaw.com
      hchang@pomlaw.com


**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
Email: msaxena@saxenawhite.com
      jwhite@saxenawhite.com
      lhooker@saxenawhite.com

15

**SAXENA WHITE P.A**.
Steven B. Singer
4 West Red Oak Lane, Suite 312
White Plains, NY 10604
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
Email: ssinger@saxenawhite.com

*Counsel for Movants and*
*Proposed Co-Lead Counsel for the Class*

16